## CHARLES J. BERRYHILL v. PATRICK H. CARNEY.

### May 19, 1899.

### Nos. 11,606—(110).

**Contract—Evidence.**

*Held*, that the trial court rightly dismissed the action, for the reason that there was no evidence tending to establish the contract alleged in the complaint.

**Taxation of Costs—Witness Fees—Affidavit Defective.**

An affidavit, which states that a witness, who was not sworn on the trial, was a material one, and was in attendance necessarily at the trial, is not sufficient to justify the taxation of fees for such witness.

Action in the district court for Crow Wing county for breach of contract. At the close of the testimony the court, Holland, J., granted defendant's motion to dismiss the action on the ground that plaintiff had not made out a cause of action. From a judgment in favor of defendant, entered pursuant to the order of dismissal, plaintiff appealed. Modified.

*Charles J. Berryhill*, pro se.

*Leon E. Lum* and *Lum, Neff & Hartley*, for respondent.

START, C. J.

The complaint herein alleges the following facts: On August 1, 1893, William C. Resser and Charles Davison held a judgment against the defendant for $5,507.71. Resser was then indebted to the plaintiff in the sum of $500 for his services in securing the judg-

ment. Thereupon the plaintiff, defendant, and Resser agreed between themselves that the defendant should pay Resser $1,000 in money, and give his note for $500, in full release of the interest of Resser in the judgment, and, further, that he should pay to the plaintiff $100 in 60 days, and deed to him an undivided one-eighth interest in the south ½ of section 13, township 147 north, range 55 west, in the county of Steele, North Dakota, in full satisfaction of the claim of the plaintiff against Resser for such services. Thereafter Resser executed a release of his interest in the judgment to the defendant, who paid to him the $1,000, and gave the note, which he afterwards paid. The plaintiff demanded of the defendant the payment of the $100, and that he execute a deed of the land, as so agreed; but he has refused so to pay or deed the land. The answer put in issue the making of the alleged contract by the defendant. The trial court, at the close of the plaintiff's evidence, dismissed the action. Judgment of dismissal was entered, and for defendant's costs and disbursements, amounting to $16.54, from which the plaintiff appealed to this court.

On the trial there was evidence to establish the fact that Resser and the defendant entered into a contract, whereby the former was to release his interest in the judgment on the terms stated in the complaint, and that Resser executed a release of his interest in the judgment, which was one-half thereof, to the defendant, who paid to Resser the $1,000, and gave his note for $500, which he has paid. But, as to the alleged contract that the defendant should pay to the plaintiff $100, and deed to him an undivided one-eighth interest in the land, the defendant insists there was no evidence given on the trial tending to prove it. This is substantially the only question on this appeal.

The plaintiff maintains that evidence was given on the trial fairly tending to establish the contract. We have attentively read the record in the case, and particularly the part thereof to which the plaintiff referred us in his brief as containing the evidence tending to establish his alleged contract with the defendant. If there is any evidence in the case tending to establish this contract, it is to be found in the plaintiff's own testimony on the trial. He testified that on a certain evening he, Resser, and the defendant met at the hotel.

He was then acting for Davison, as well as himself. As to what occurred at this meeting the plaintiff testified, among other matters, as follows:

"Q. Well, now, what occurred on that evening? A. Mr. Resser and Mr. Carney, together, concluded or proposed that Mr. Davison take the land at $3,200 in payment of his half interest in the judgment, and that was understood, or at any rate so far as it could be understood, that evening at the hotel. * * * Q. Now, what proposal was made? A. The proposition that was made was that Mr. Davison was to take this land at a valuation of $10 an acre, to the extent of $2,800, which would be his share of the judgment, and I was to have an interest in it to the extent of one-eighth, which was to be valued at $400, and Carney was to pay in addition to that $100, making my fees by agreement, to which Mr. Resser assented, $500 for his share of the case. Q. Was that for his share? A. His share alone * * * of the attorney's fees. Q. Now, on that occasion, was there any conversation concerning the settlement between Mr. Carney and Mr. Resser, of that judgment? A. Well, they talked a great deal together. Q. Did you hear it? A. I did not. They wouldn't tell me what they were talking about,— wouldn't give me any idea as to the settlement they had arranged between themselves. Q. Then you knew nothing about the terms? A. Nothing whatever about the terms. * * * I knew there was one going on. I never knew what the terms of that settlement were, until it was alleged in the answer in this case [that is, in the case of Berryhill v. Resser, 64 Minn. 479, 67 N. W. 542]. Q. What, if anything, was said about putting that in writing that evening? A. * * * I don't recollect that there was anything said about it. But going home, and overnight, I concluded that, inasmuch as this was a matter in which I was acting for Mr. Davison, and having a limited authority, whether or not it ought not to be put in writing, and it is quite possible that I suggested to Mr. Carney * * * that the matter ought to be reduced to writing."

He further testified that the next forenoon Mr. Resser and the defendant called at his office, and one of them suggested that the matter should be put in writing. After some discussion of the subject, and an examination of a letter from Mr. Davison, the plaintiff concluded that he was not authorized to make the contract for Mr. Davison. On this point he testified:

"I read this letter, as I say. I know I read it once. I think I read it twice. And I underscored or called their attention to the use of the double—plural—pronouns here, insisting that Mr. Davison meant that it was he (Davison) and Mr. Resser who

were to take this land, together, and because of that I had no authority whatever to make that agreement the night before.    Q. Did you so state?    A.  I told him so; that I hesitated about putting any agreement of any kind in writing relative to that land until Mr. Davison had acquiesced in that proposal; had no right to make any such bargain, finally and ultimately, until he acquiesced in it. He could do what he saw fit, just as Mr. Resser was doing what he saw fit, with reference to his half of the judgment."

Now, it is perfectly clear, from this evidence, that the consideration for the defendant's promise to pay the plaintiff $100 and convey the land to Mr. Davison, in which the plaintiff was to have an interest to the extent of one-eighth thereof, was the promise made on behalf of Mr. Davison to release his half of the judgment.   It was incumbent on the part of the plaintiff, in order to prove this alleged contract, to show that he had authority to make it on behalf of Mr. Davison.   This he did not do, but, on the contrary, he expressly testified that he had no such authority; or, in other words, the plaintiff, by his own testimony, proved that there never was any valid agreement on the part of the defendant to pay to him the $100 and deed the land.   There was no evidence in the case tending to prove the contract alleged, and for this reason the trial court rightly dismissed the action.

There was included, against the objection of the plaintiff, in the judgment in this case, the sum of $4.24 as fees for a witness who was not sworn on the trial.   This is assigned as error, for the reason that the affidavit which was the basis for the taxation did not state any facts showing that it was necessary to have the witness in attendance at the trial.   The affidavit on this point simply states that the witness was a material one, and was in attendance necessarily two days at the trial.   This is not sufficient.   D. M. Osborne & Co. v. Gray, 32 Minn. 53, 19 N. W. 81.   It was error to tax the fees of the witness, and the judgment must be modified accordingly.

Ordered that this cause be remanded to the district court with directions to modify the judgment by deducting therefrom $4.24, included therein for witness fees, and, further, that no statutory costs be allowed the appellant on this appeal.