**GOPHER OIL COMPANY, INC., a Minnesota corporation, Plaintiff,**

v.

**UNION OIL COMPANY OF CALIFORNIA, a California corporation, Defendant.**

**Civ. No. 4–88–16.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 15, 1991.

Lawrence C. Brown, Delmar R. Ehrich, Brian Boru O'Neill, Paul M. Vaaler, Faegre & Benson, Minneapolis, Minn., for plaintiff.

Joe A. Walters, Ann Meredith–Will, Corey John Ayling, O'Connor & Hannan, Minneapolis, Minn., for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's motion for certification pursuant to 28 U.S.C. § 1292(b), plaintiff's application for fees and other expenses, defendant's renewed motion for a new trial, and defendant's motion for amendment of the judgment entered in this case on November 20, 1990.[1]

For the reasons stated herein, plaintiff's motion for certification will be granted in part and denied in part, plaintiff's application for fees and other expenses will be granted in part and denied in part, defendant's renewed motion for a new trial will be denied, and defendant's motion for amendment of the judgment will be denied.

## BACKGROUND

Plaintiff Gopher Oil Company, Inc. ("Gopher Oil" or "Gopher") initiated this action against defendant Union Oil Company of California, Inc. ("Union Oil" or "Union") under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA"), the Minnesota Environmental Response and Liability Act, Minn.Stat. §§ 115B.01–115B.37 ("MERLA") and various Minnesota common law theories. The facts applicable to this motion are set forth in this court's order dated October 12, 1990, and are hereby incorporated by reference. In an order dated November 20, 1990, this court ordered that:

1. There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the clerk shall enter final judgment in the amount of $423,272.81 plus prejudgment interest in the amount of $93,572.34 plus post-judgment interest in the amount of $4,794, against defendant Union Oil Company of California and in favor of plaintiff Gopher Oil Company, Inc.

2. There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the clerk shall enter final judgment declaring that defendant Union Oil Company of California is solely responsible for the future costs of investigating, cleaning up and otherwise responding to the contaminated site located at 825 Thornton Avenue S.E., Minneapolis, Minnesota, and also declaring that defendant Union Oil Company of California is 100 percent liable for any necessary response costs and for future reasonable and necessary removal costs plaintiff Gopher Oil Company, Inc. may incur in connection with the contaminated site located at 825 Thornton Avenue S.E., Minneapolis, Minnesota.

3. The court will retain jurisdiction over plaintiff's fraud claim and will determine the damages due thereunder after the cleanup at the Thornton Avenue site has been substantially completed.

*Gopher Oil Company, Inc. v. Union Oil Company of California, Inc.,* 757 F.Supp. 988 at 997–998 (D.Minn.1990) [hereinafter *Order dated November 20, 1990*].

A. *Plaintiff's Motion for Certification Pursuant to 28 U.S.C. § 1292(b)*

On December 19, 1990, Union Oil filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit. Union Oil indicated that it was appealing from paragraphs 1 and 2 of this court's order dated November 20, 1990. Gopher Oil now moves the court pursuant to 28 U.S.C. § 1292(b) for an order allowing it to appeal immediately paragraph 3 of the order dated

---

1. Defendant's motion seeks amendment of the judgment entered on October 12, 1990. The court vacated that judgment in an order dated November 23, 1990. The effective judgment in this case was entered on November 20, 1990. Consequently, the court will treat the defendant's motion as a motion to amend the judgment entered November 20, 1990.

November 20, 1990.[2]

28 U.S.C. § 1292(b) provides in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b) (1988). Applying this statute to paragraph 3 of the November 20, 1990, order leads to the conclusion that Gopher Oil's motion for an immediate appeal should be granted.

Paragraph 3 of the November 20, 1990, order is "not otherwise appealable" under 28 U.S.C. § 1292. *See* 28 U.S.C. § 1292(a), (c) & (d) (1988). Moreover, in paragraph 3 the court retained jurisdiction over Gopher Oil's fraud claim. No final judgment has been entered on the fraud claim and thus that portion of the court's order is not a final decision and not appealable pursuant to 28 U.S.C. § 1291. *See* 28 U.S.C. § 1291 (1988).

Discretionary appeal from an interlocutory order of the district court is permitted if the district judge certifies in writing that the order (1) "involves a controlling question of law," (2) "as to which there is substantial ground for a difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure: Jurisdiction* § 3930 (1977). An order may be amended to include the prescribed statement of § 1292(b) at any time. Fed.R.App.P. 5(a).

Union Oil maintains that an immediate appeal of paragraph 3 is improper for several reasons. Union Oil asserts that Gopher Oil has failed to identify a controlling question of law within the meaning of § 1292(b), that the issue Gopher Oil seeks to appeal is not ripe for review, and that whether this court abused its discretion in applying Minnesota common law is not a controlling issue of law as to which there is substantial ground for difference of opinion. The court will address each of these assertions as it applies to the requirements of § 1292(b).

First, the court must determine whether paragraph 3 of the November 20, 1990, order involves a controlling question of law. Union Oil contends that Gopher Oil has failed to identify a controlling question of law within the meaning of § 1292(b). In support of this contention, Union points to the question of law Gopher requests this court to certify. That question reads:

> Did the district err in its order determining that plaintiff's CERCLA and MERLA remedies pre-empt available remedies under Minnesota common law, including plaintiff's out-of-pocket damages for defendant's fraud until such undetermined future time as the environmental cleanup of the plaintiff's polluted property under CERCLA and MERLA is substantially complete?

(Plaintiff's Memorandum in Support of Motion for Certification Pursuant to 28 U.S.C. § 1292(b) at 4). Union Oil argues that this proposed question of law does not accurately reflect the reasoning which underlies paragraph 3. Union Oil asserts that because the court did not expressly or impliedly order that Gopher Oil's remedies under CERCLA and MERLA replaced Gopher Oil's remedies for fraud, pre-emption is not an issue. Union Oil's contention has some merit. Consequently, the court will not certify to the Eighth Circuit the specific question Gopher Oil has proposed. Contrary to Union Oil's contention, however, Gopher Oil's failure to accurately identify the controlling question of law in this case does not mean that such a question does not exist.

Union Oil next contends that the issue Gopher Oil seeks to appeal is not ripe for

2. Gopher Oil's motion refers to this court's order dated October 12, 1990. For the reasons discussed in footnote 1, *supra*, the court will construe Gopher Oil's motion for certification as referring to the November 20, 1990, order.

review. In its order dated October 12, 1990, the court explained more fully its order contained in paragraph 3. The court stated:

> [I]t is necessary to consider the effect that the cleanup activities which CERCLA and MERLA dictate will have on the value of the property. Because this cleanup has not yet occurred, the court does not have a sufficiently established factual basis on which to render a decision on the plaintiff's fraud claim. Accordingly, the court will order entry of judgment on the CERCLA and MERLA claims but will retain jurisdiction over the fraud claim until the ordered cleanup has been substantially completed. When the cleanup of the site is substantially complete, the court will receive evidence on the value of the clean property and will then make a determination of what relief plaintiff is entitled to under its fraud claim.

*Gopher Oil Company, Inc. v. Union Oil Company of California, Inc.*, 757 F.Supp. 988, 996 (D.Minn.1990). [hereinafter *Order dated October 12, 1990*, 757 F.Supp. 988]. Union Oil maintains that because the site has not yet been cleaned up, the value of the cleaned up property is unknown and thus the factual record is not sufficiently developed to allow the Eighth Circuit to review this court's order. Moreover, Union Oil suggests that the Eighth Circuit has expressed an unwillingness to grant interlocutory appeals where there is an incomplete factual and legal record. In support of this proposition Union Oil cites *Paschall v. Kansas City Star Co.*, 605 F.2d 403, 406 (8th Cir.1979), *rev'd on other grounds*, 727 F.2d 692 (1984); *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977); *Control Data Corp. v. International Business Machine Corp.*, 421 F.2d 323, 326 (8th Cir.1970).

Union Oil is correct in contending that the factual record pertinent to paragraph 3 is incomplete. The incomplete factual record does not present an insurmountable barrier to certification, however. Whether this court should allow an immediate appeal of paragraph 3 depends in large mea-sure on how the issue to be appealed is characterized. The court's characterization of the issue to be appealed is at odds with the parties' characterizations. Gopher Oil asserts that the issue to be appealed is inextricably bound up with the pre-emption issue. Union Oil responds that there is no pre-emption issue and that paragraph 3 is not ripe for review because the value of the cleaned up site is as yet unknown. In the court's view, the undeveloped factual record is not an impediment to appellate review because the Eighth Circuit need only decide a question of law. Although the court recognizes that the question of law bears some relation to undeveloped facts, the development of those facts will not materially alter the question to be presented to the Eighth Circuit.

■ In paragraph 3, the court retained jurisdiction over Gopher Oil's fraud claim and indicated that it will determine the damages due thereunder after the cleanup at the site has been substantially completed. The question which the United States Court of Appeals for the Eighth Circuit might address is whether it is proper for the court to retain jurisdiction over the fraud claim and determine damages due thereunder at some future date, or whether this court should have immediately awarded Gopher Oil damages in accordance with the jury's verdict. Although the value of the site will most likely change as the cleanup proceeds, it is not necessary to know the final value of the site in order to determine whether this court has properly addressed the matter thus far. The incomplete factual record is not a bar to Eighth Circuit review of this controlling question of law.

■ The court must next determine whether there is substantial ground for difference of opinion with respect to the controlling question of law it has identified. Union Oil contends that whether this court abused its discretion in applying Minnesota common law is not a controlling issue of law as to which there is substantial ground for difference of opinion. Union Oil correctly states that the Eighth Circuit applies

a generous standard in reviewing a federal district court's ruling on the law of the state in which it sits. *Green v. St. Louis Housing Authority*, 911 F.2d 65, 68 (8th Cir.1990). In *Green*, the Eighth Circuit stated:

> We defer to the state law rulings of federal district courts which sit in the state whose law is controlling. We may refuse to follow the federal district court's ruling only if we find that it is fundamentally deficient in analysis, without a reasonable basis, or contrary to reported state court opinion.

*Id.* Although the court does not believe that its ruling is fundamentally deficient in analysis, without a reasonable basis, or contrary to reported Minnesota court opinion, it did note in its October 12, 1990, order that it had "thoroughly examined the Minnesota cases involving fraudulent misrepresentations in the sale of real estate and [had] concluded that the Minnesota courts [had] never been faced with a case which is substantially similar to the case now before the court." (*Order dated October 12, 1990*, 757 F.Supp. 988 at 995 (citing cases)). Based on the dearth of Minnesota precedent in this area, the court would welcome the guidance of the Eighth Circuit in the handling of this matter. Moreover, the court is not convinced that the controlling question of law it has identified above is solely a matter of Minnesota common law. Rather, the issue of whether it is proper for the court to retain jurisdiction over the fraud claim and determine damages due thereunder at some future date requires an examination of CERCLA and MERLA juxtaposed to the common law. (*See Order dated October 12, 1990*, 757 F.Supp. at 996).

The court also notes that the significance of the question of law which the Eighth Circuit might review is heightened in light of the pending onslaught of similar environmental cases. It is no secret that the number of environmental cases on federal dockets is steadily increasing. The need for clear legal precedent on issues such as that presented to the Eighth Circuit is increasing as well.

Finally, the court must determine whether an immediate appeal from paragraph 3 may materially advance the ultimate termination of this litigation. Union Oil argues that in light of the deference with which the Eighth Circuit would view this court's application of Minnesota common law, it is unlikely that an appeal would advance the ultimate termination of this litigation. Again, the court believes that paragraph 3 is founded on sound legal principle and effectuates the policy considerations which underlie the out-of-pocket damages rule. Moreover, the court does not view the question it will certify as a pure question of Minnesota common law. Notwithstanding these convictions, the court notes that if the Eighth Circuit views the law differently, then Gopher Oil might be entitled to an immediate award of damages on their fraud claim. Consequently, this court would not need to maintain jurisdiction over Gopher Oil's fraud claim and the ultimate termination of this litigation would be materially advanced.

The Eighth Circuit has held that the general purpose of § 1292(b) is to provide interlocutory appeal in exceptional cases in order to avoid protracted and expensive litigation. *Paschall*, 605 F.2d at 406. Allowing Gopher Oil to take an immediate appeal from paragraph 3 will allow for the most efficient use of judicial resources and curb the expense and duration of this litigation. Union Oil has already appealed from paragraphs 1 and 2 of the court's November 20, 1990, order. In order for the Eighth Circuit to rule on paragraphs 1 and 2 it will have to be thoroughly familiar with the facts and law surrounding this case. Judicial resources will be used most wisely if the Eighth Circuit has before it all the issues in this case which, if not appealed immediately, will most likely be appealed in the future. In view of the foregoing, the court concludes that Gopher Oil should be allowed to take an immediate appeal from paragraph 3 of this court's order dated November 20, 1990.

**B. *Plaintiff's Application For Fees and Other Expenses***

Gopher Oil has moved, pursuant to Rule 59(e) of the Federal Rules of Civil Proce-

dure, for an order amending the judgment of November 20, 1990,[3] to include an award of attorneys' fees, costs and disbursements. The court will first address the availability of attorneys' fees under the federal and state statutory schemes. The court will then calculate reasonable attorneys' fees recoverable under CERCLA and MERLA and will determine which costs are recoverable under each statute.

1. Availability of Attorneys' Fees Under CERCLA

The issue of whether attorneys' fees are available for a prevailing party in a CERCLA private cost recovery action is thorny. Whenever it is faced with a request for attorneys' fees, a court must start with the "American Rule." The American Rule is that each party in a lawsuit ordinarily shall bear its own attorneys' fees unless there is express statutory authorization to the contrary. *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). Union Oil argues that CERCLA, read as a whole, does not provide for recovery of attorneys' fees in private cost recovery actions. Gopher Oil, on the other hand, asserts that attorneys' fees and other litigation expenses are "response costs" which are clearly recoverable in this type of private CERCLA action. The court will examine each party's arguments in more detail.

In support of its position that attorneys' fees are not recoverable in private cost recovery actions under CERCLA, Union Oil relies on the language of the statute and several federal district court cases. First, Union Oil cites 42 U.S.C. §§ 9604(b)(1) & 9659(a). Respectively, these sections allow the federal government to recover attorneys' fees when bringing certain types of actions specified within the statute and allow private parties to recover attorneys' fees when they have brought an action to enforce certain environmental regulations. Union Oil points out that CERCLA has no similar provision allowing for attorneys' fees in private cost recovery actions brought under to 42 U.S.C. § 9607. The present case falls within this latter category and consequently Union Oil argues that attorneys' fees are not available in this case regardless of the court's determination on the merits.

In support of its position that the statutory language is not sufficiently specific to allow for an award of attorneys' fees in this matter, Union Oil cites *Fallowfield v. Strunk,* No. 89–8644, slip op., 1990 WL 52745 (E.D.Pa. April 23, 1990); *Mesiti v. Microdot, Inc.,* 739 F.Supp. 57, 62–63 (D.N.H.1990); *Regan v. Cherry Corp.,* 706 F.Supp. 145, 148–50 (D.R.I.1989); *T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696, 707–08 (D.N.J.1988). In all of these cases federal district courts concluded that the prevailing party in a private cost recovery action under CERCLA may not recover attorneys' fees.[4] In this group of cases, *T & E Industries* and *Regan* contain the most persuasive reasoning.

In *T & E Industries,* the United States District Court for the District of New Jersey examined 42 U.S.C. § 9604(b) which provides for recovery of attorneys' fees

---

**3.** Gopher Oil has moved for an amendment of the judgment of October 12, 1990. For the reasons discussed in footnote 1, *supra,* the court will construe the motion as requesting an amendment of the judgment of November 20, 1990.

**4.** In an action similar but not identical to the present matter, the United States Court of Appeals for the Ninth Circuit found that CERCLA did not specifically provide for the recovery of attorney fees. In *Idaho v. Hanna Mining Co.,* 882 F.2d 392, 396 (9th Cir.1989), the court held that "CERCLA does not state whether attorneys' fees may be awarded for actions for natural resource damages under 42 U.S.C.

§§ 9607(a)(4)(C) and 9607(f) nor do any cases appear to resolve the question. We elect to make no award of attorneys' fees." *Id.* at 396. Although *Hanna Mining* sheds some light on what might constitute a proper interpretation of CERCLA, the court notes that 42 U.S.C. § 9607(a)(4)(C) differs from 42 U.S.C. § 9607(a)(4)(B) in that it does not contain the language "other necessary costs of response." Because this language was key to the Eighth Circuit's analysis in *General Electric Co. v. Litton Industrial Automation Systems, Inc.,* 920 F.2d 1415 (8th Cir.1990), discussed *infra, Hanna Mining* is of little value with respect to the issue now before the court.

and litigation costs by the government. The court then held that "[t]his court can find no analogous portion of the statute which would entitle a private party to recover for legal action taken and refuses to create a right to recovery of attorney fees where Congress has not expressly stated such to exist." 680 F.Supp at 708. In a footnote, the court went on to dismiss the plaintiffs' argument that because response costs include "enforcement activities related thereto" plaintiffs are entitled to attorneys' fees. The court stated that "[w]hile, plaintiffs may bring an action for recovery of response costs, they may not bring an action to enforce CERCLA's cleanup provisions against another private entity. Thus, private parties do not incur "enforcement costs" as contemplated by CERCLA." *Id.* at n. 13.

In *Regan*, the United States District Court for the District of Rhode Island first noted that Congress re-examined and amended CERCLA in 1976 by enacting the Superfund Amendments and Reauthorization Act of 1976 ("SARA"). The court then examined the availability of attorneys' fees under CERCLA and concluded that:

> If Congress had intended to permit citizens seeking response costs to recover their attorney fees, it would simply have amended § 107 to allow the recovery of these litigation costs. SARA was a comprehensive overhaul of CERCLA. Therefore, it would have been a simply [sic] matter to amend § 107 to allow recovery of attorney fees. Certainly Congress, if it had desired to allow reimbursement of attorney fees in response cost suits, would not have established a system whereby one must bring identical claims under § 107 and § 310 as plaintiffs have done here.

706 F.Supp. at 149.

Although the reasoning of *T & E Industries* and *Regan* appears to be somewhat

inviting, it has been replaced by the Eighth Circuit's reasoning in *General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415 (8th Cir.1990). In *General Electric* the Eighth Circuit noted that 42 U.S.C. § 9607(a)(4)(B) allows private parties to recover "necessary costs of response ... consistent with the national contingency plan." The court further noted that 42 U.S.C. § 9601(25) defines "response" as "removed, removal, remedy and remedial action; all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." The Eighth Circuit emphasized the language "include enforcement activities related thereto." 920 F.2d at 1421–22. The court held that a private party cost recovery action is an enforcement activity within the meaning of the statute.[5] *Id.* at 1422 (citing *Cadillac Fairview/California, Inc. v. Dow Chem. Co.*, 840 F.2d 691, 694 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 892 (9th Cir. 1986)). The court then concluded that:

> Attorney fees and expenses necessarily are incurred in this kind of enforcement activity and it would strain the statutory language to the breaking point to read them out of the "necessary costs" that § 9607(a)(4)(B) allows private parties to recover. We therefore conclude that CERCLA authorizes, with a sufficient degree of explicitness, the recovery by private parties of attorney fees and expenses. This conclusion based on the statutory language is consistent with two of the main purposes of CERCLA— prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party. These purposes would be undermined if a non-polluter (such as GE) were forced to absorb the litigation costs of recovering its response

---

5. This holding relieves one of the arguments in *T & E Industries* of its persuasive force. *See* 680 F.Supp. at 708 n. 13. It should also be noted that the reasoning in *Regan* is not necessarily superior to the Eighth Circuit's reasoning in *General Electric*. Although Congress could have specifically provided for recovery of attorneys' fees when it enacted SARA, the case law was not particularly well developed prior to SARA and thus Congress may not have been aware that courts would interpret CERCLA as disallowing the recovery of attorneys' fees. *See General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415, 1422 n. 10 (8th Cir. 1990).

costs from the polluter. The litigation costs could easily approach or even exceed the response costs, thereby serving as a disincentive to clean the site.

*Id.* The court also noted that various federal district courts have addressed and disagreed on the availability of attorneys' fees in private cost recovery actions.[6,7] *Id.* at 1422 n. 10.

The Eighth Circuit examined the language of CERCLA, the policies which underlie the statute and legal authorities which have addressed the availability of attorneys' fees in private cost recovery actions. The court concluded that attorneys' fees are recoverable in private cost recovery actions brought pursuant to 42 U.S.C. § 9607(a)(4)(B). That is the law this court will apply.

### 2. Availability of Attorneys' Fees Under MERLA

■ MERLA provides that "[u]pon motion of a party prevailing in an action under §§ 115B.01 to 115B.15 the court may award costs, disbursements and reasonable attorney fees and witness fees to that party." Minn.Stat. § 115B.14 (1990). No court has construed Minn.Stat. § 115B.14.[8] Gopher Oil argues that because it was a prevailing party in an action brought under MERLA § 115B.04, it is entitled to an award of expenses as described in § 115B.14. Union Oil notes that § 115B.14 places an award of

expenses within the court's discretion. Union Oil also suggests that "[o]ther environmental statutes allowing for attorney fees provide guidance in ascertaining the policy behind allowing attorney fees." (Memorandum Opposing Plaintiff's Application for Fees and Other Expenses at 6).

In support of its position that the court should not exercise its discretion to award attorneys' fees, Union Oil cites several federal court opinions which address the availability of attorneys' fees under various environmental statutes.[9] Union Oil cites opinions interpreting the clean air act, the toxic substances control act and the endangered species act. Although the cases Union Oil cites are somewhat helpful in assessing the purposes which underlie attorneys' fees statutes in general, in light of the Eighth Circuit's decision in *General Electric*, they are of little consequence in determining whether the court should award attorneys' fees under CERCLA or MERLA. Indeed, given the similarity between CERCLA and MERLA,[10] CERCLA is perhaps the quintessential "other environmental statute" which provides "guidance in ascertaining the policy behind allowing attorneys' fees." Given the clear statutory authority provided by Minn.Stat. § 115B.14 and the Eighth Circuit's decision in *General Electric*, the court concludes that it will award reasonable attorneys' fees to Gopher

---

**6.** Among the district court orders the Eighth Circuit cited were *Regan v. Cherry Corp.,* 706 F.Supp. 145 (D.R.I.1989) and *T & E Industries v. Safety Light Corp.,* 680 F.Supp. 696 (D.N.J. 1988).

**7.** The United States Court of Appeals for the Third Circuit has implicitly agreed with the Eighth Circuit's decision in *General Electric.* In *Jersey City Redevelopment Authority v. PPG Industries, Inc.,* 866 F.2d 1411, 28 E.R.C. 1873 (3d Cir.1988), the Third Circuit held that a municipal redevelopment authority's attorneys' and expert witnesses' fees incurred in a cost recovery suit against a private company were recoverable under CERCLA. *Id.* 866 F.2d 1411, 28 E.R.C. at 1881. Although the court did not explicitly address the availability of attorneys' fees under CERCLA, the court granted the prevailing party its attorneys' fees incurred in pursuing its successful CERCLA claims and upheld the district court's denial of attorneys' fees incurred in pur-

suing claims which ultimately proved to be unsuccessful. *Id.*

**8.** *See generally* Williams, *Legislative History of the Minnesota "Superfund" Act,* 10 Wm. Mitchell L.Rev. 851, 861 (1984) (indicating that MERLA "allows the court to award litigation costs to a prevailing party" and citing Minn.Stat. § 115B.14.)

**9.** Union Oil cites *Alabama Power Co. v. Gorsuch,* 672 F.2d 1 (D.C.Cir.1982); *Environmental Defense Fund v. EPA,* 672 F.2d 42 (D.C.Cir.1982); *Carson–Truckee Water Conservancy Dist. v. WATT,* 575 F.Supp. 467 (D.Nev.1983).

**10.** *See,* Williams, *Legislative History of the Minnesota "Superfund" Act,* 10 Wm. Mitchell L.Rev. 851, 856 (1984) (noting that CERCLA "provided a model for a [Minnesota] legislative response to the problems caused by contaminated hazardous waste sites in [Minnesota].")

Oil in its action brought pursuant to Minn. Stat. § 115B.04.[11]

■ Union Oil argues that both CERCLA and MERLA prohibit double recovery and thus this court might allow Gopher Oil to recover attorneys' fees under CERCLA or MERLA but may not allow recovery under both statutes. Union Oil is correct in asserting that both CERCLA and MERLA prohibit double recovery. 42 U.S.C. § 9614(b); Minn.Stat. § 115B.13. The court need not decide under which one statute Gopher Oil is entitled to recover, however. Although both CERCLA and MERLA prohibit recovery under both statutes, neither statute prohibits a court from determining that a party is entitled to recover alternatively under both statutes. Accordingly, the court is not barred from concluding that Gopher is entitled to recover attorneys' fees and costs under either CERCLA or MERLA.

### 3. Calculation of Fees and Expenses Recoverable Under CERCLA

In subsection 1 above, the court concluded that it will award reasonable attorneys' fees to Gopher Oil under CERCLA. The court will now address which attorneys' fees and expenses prayed for in Gopher Oil's petition are recoverable under CERCLA.

#### a. Attorneys' Fees

In *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137 (8th Cir.1982), the Eighth Circuit established the usual procedure to be used in calculating attorneys' fees. Under *Avalon*, the district court first computes the basic "lode star" figure by multiplying the number of hours reasonably expended times a certain hourly rate. *Id.* at 139. After establishing the lode star figure, the court then considers other relevant factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The court may use the *Johnson* factors to

increase or decrease the basic lode star figure if such an adjustment is appropriate. *Id.; see also Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 1937 n. 3, 76 L.Ed.2d 40 (1983); *Shakopee Mdewakanton Sioux v. City of Prior Lake*, 771 F.2d 1153, 1160 (8th Cir.1985); *Cotter v. Bowen*, 879 F.2d 359, 364 (8th Cir.1989).

■ The starting point in all cases is calculating the lode star amount. The lode star amount is the product of the number of hours reasonably expended times a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. Determining the lode star amount thus presupposes another determination, namely, determining what is a "reasonable rate." In considering what constitutes a reasonable rate, a court is not automatically to accept the lawyer's proffered rate, but must examine the ordinary fee for similar work in the community. *Shakopee Mdewakanton Sioux*, 771 F.2d at 1160 (citing *Avalon*, 689 F.2d at 140) (other citations omitted). In this case, Gopher Oil's counsel has provided the court with their normal hourly rates for non-contingent litigation for established clients. (Plaintiff's Affidavit and Application for Fees and Other Expenses at 8). Gopher's counsel's billing rates for 1990 were $205 per hour for partners, $150 per hour for senior associates and $100 per hour for associates.

■ In *Defenders of Wildlife v. Administrator, EPA*, 700 F.Supp. 1028, (D.Minn. 1988) *fee award aff'd*, Nos. 88–5242 & 89–5243, slip op. (8th Cir. Aug. 8, 1990), Judge Murphy of this district approved rates of $185 per hour for Gopher's supervising attorney based on his then normal hourly rates. After an appeal on the merits, the Eighth Circuit approved the attorney's increased rate of $195 per hour. Slip op. at 1. Gopher Oil's counsel has represented to the court that its firm's normal hourly

---

**11.** The court notes that its decision regarding the availability of attorneys' fees under MERLA and its decision to exercise its discretion to award Gopher Oil attorneys' fees under MERLA are not wholly dependent on the Eighth Circuit's decision in *General Electric*. The court has already stressed one clear difference between CERCLA and MERLA, that is, MERLA contains a specific statutory authorization for attorneys' fees. Additionally, the court's decision to exercise its discretion to award attorneys' fees to Gopher Oil will further the purposes which underlie MERLA. *See* pp. 1015–1016 *infra* (discussing purposes of MERLA).

rates have been adjusted in some instances to reflect additional experience. This is a well-recognized and accepted practice among local law firms and legal practitioners generally. The court is familiar with the ordinary fees charged for work similar to that performed in this case and concludes that Gopher Oil's counsel's normal billing rate is a reasonable rate for purposes of calculating the lode star amount. *See Hardman v. Bd. of Educ. of Dollarway, Ark.*, 714 F.2d 823, 825 (8th Cir.1983); *McDonald v. Johnson & Johnson*, 546 F.Supp. 324, 332 (D.Minn.1982), *vacated and remanded in part on other grounds*, 722 F.2d 1390 (8th Cir.1983).

█ Union Oil argues that if the court awards attorneys' fees, fees incurred in pursuing Gopher Oil's fraud and other common law claims should be excluded from the award. With respect to Gopher's non-fraud common law claims, the court agrees. In addition to claims under CERCLA, MERLA and common law fraud, Gopher Oil's complaint contained claims based on negligent misrepresentation, negligence, nuisance, trespass, environmental tort and negligence per se. Only the CERCLA, MERLA and fraud claims were allowed to go to the jury. Gopher Oil has failed to present the court with any authority which would allow recovery of attorneys' fees on its non-fraud common law claims. Moreover, in *Hensley v. Eckerhart*, 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983), the United States Supreme Court held that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claims should be excluded in considering the

amount of a reasonable fee." The court can find no persuasive reason why Gopher Oil should be allowed to recover attorneys' fees for its non-fraud common law claims. The attorneys' fee award will be reduced accordingly.[12]

█ Gopher Oil argues that its common law fraud claim is so inextricably intertwined with its CERCLA and MERLA claims that attorneys' fees incurred in pursuing the fraud claim should be recoverable under CERCLA and MERLA. The court agrees. Gopher Oil brought its fraud claim in response to a defense Union Oil raised to Gopher's CERCLA and MERLA claims.[13] Additionally, the court and jury considered evidence admitted on the fraud claim in determining how to apportion liability for future cleanup costs under CERCLA and MERLA. *See* Special Verdict Form dated July 11, 1990, questions 8 & 9.[14]

In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court addressed the relationship between the results obtained in a trial and an award of attorneys' fees:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants ... counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."
>
> . . . .

**12.** In a letter to the court dated February 13, 1991, Gopher Oil detailed the attorneys' fees incurred in pursuing its CERCLA and MERLA claims, its common law fraud claim, and its non-fraud common law claims. This representation to the court has served as the basis for reducing the attorneys' fee award.

**13.** Gopher Oil describes its motivation for bringing the fraud claim as follows:

Union Oil raised the "as is" provision in the October 23, 1980 purchase agreement as its primary defense to both the CERCLA and MERLA claims. In response, Gopher Oil argued successfully that: (1) the "as is" provi-

sion was void because of Union Oil's fraud in the 1980 transaction and (2) the "as is" provision, even if valid, did not bar the statutory claims.

(Plaintiff's Affidavit and Application For Fees and Other Expenses at 3).

**14.** In the Special Verdict Form the fraud claim was referred to as the misrepresentation claim. There was no objection to this characterization at the time of trial and the parties agree that the two claims are identical regardless of their names.

In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 434–35, 103 S.Ct. at 1940. Gopher Oil's common law fraud claim and its CERCLA and MERLA claims involved a common core of facts and were ultimately based on related legal theories. The facts and law applicable to these three claims are so interrelated it is nearly impossible to separate them. Moreover, as the manner in which Gopher raised its fraud claim reflects, Gopher's CERCLA and MERLA claims required it to pursue the fraud claim. In light of this fact and the Supreme Court's reasoning in *Hensley*, the court will award Gopher Oil its attorneys' fees incurred in pursuing the fraud claim.

Union Oil also argues that the CERCLA and MERLA claims did not need to be tried to a jury and thus that any attorneys' fees incurred in preparing those claims for a jury trial must be excluded from the court's award. There is no right to a jury trial in CERCLA cost recovery actions. *United States v. Northeastern Pharmaceutical & Chemical Co., Inc.*, 810 F.2d 726, 749 (8th Cir.1986) (holding that government action for recovery of response costs under CERCLA is an equitable action in which the defendant does not have a right to a jury trial). Although Gopher Oil did not have a right to a jury trial on its CERCLA and MERLA claims, the court, in its discretion, elected to use the jury as an advisory jury with respect to those statutory claims. *See* Fed.R.Civ.P. 39(c). The jury's findings, reflected in its answers to the questions propounded in the Special Verdict Form, provided substantial assistance to the court in arriving at its judgment. Accordingly, the costs of presenting the CERCLA and MERLA claims to a jury will not be deducted from the award of attorneys' fees in this case.

Gopher Oil also contends that it is entitled to attorneys' fees based on its present hourly rates rather than the rates prevailing at the time various work was done on the case. In *Jenkins v. Missouri*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), the United States Supreme Court refused to overturn an Eighth Circuit award of attorney fees which included an adjustment for delay in payment. In so holding, the Court reasoned that "[c]learly, compensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed...." *Id.* at ——, 109 S.Ct. at 2469. The Court stated that "[a]n adjustment for delay in payment is, we hold, an appropriate factor in the determination of what constitutes a reasonable attorney's fee...." *Id.* Although the Supreme Court was addressing the proper calculation of attorneys' fees under 42 U.S.C. § 1988, the Court's reasoning is equally applicable to the calculation of attorneys' fees under CERCLA. *See Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (citing *Sierra Club v. EPA*, 769 F.2d 796, 809–10 (D.C.Cir.1985); *Louisville Black Police Officer's Organization, Inc. v. Louisville*, 700 F.2d 268, 276, 281 (6th Cir.1983)). Accordingly, the court concludes that it is appropriate to calculate Gopher Oil's attorneys' fees at present hourly rates rather than historical rates.

In accordance with the foregoing, the court will calculate the lode start amount by multiplying the number of hours Gopher's counsel has reasonably expended on this case [15] times Gopher's counsel's

---

**15.** The court has made a determination regarding the reasonableness of the amount of time Gopher's counsel has spent on this case. Gopher's counsel has provided the court with a lengthy appendix to its application for fees and other costs. Included in the appendix are the backgrounds of the legal personnel involved in preparation of the case, counsel's time and ex-

present hourly rates for each attorney. The fees for the four attorneys involved in the preparation of Gopher Oil's case are as follows:

| Attorney | Hours Reasonably Spent | Reasonable Rate Per Hour | Fee |
|---|---|---|---|
| Brian O'Neill (Supervising Attorney) | 422.75 | $205 | $ 86,663.75 |
| Lawrence Brown (Partner) | 32.25 | $205 | $ 6,611.25 |
| Delmar Ehrich (Senior Associate, Lead Attorney) | 1321.50 | $150 | $198,225.00 |
| Paul Vaaler (Associate) | 573.25 | $100 | $ 57,325.00 |
| | | TOTAL: | $348,825.00 |

Having calculated the lode star amount, the court must next examine the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[16] The court will not undertake a thorough analysis of each of these factors. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court noted that although the *Johnson* factors may be employed to adjust the lode star fee upward or downward, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Id.* at 434 n. 9, 103 S.Ct. at 1939 n. 9; *see also Cotter v. Bowen*, 879 F.2d 359, 364 (8th Cir.1989).

An examination of the twelve *Johnson* factors as applied to this case do not warrant an upward or downward adjustment in the lode star amount. This result should not be surprising because the court has specifically considered nine of the *Johnson* factors in calculating the lode star amount.

The court will briefly summarize those factors here. (1 & 5) The time and labor required and the customary fee have been addressed above. (2) The novelty and difficulty of the questions involved in this litigation are apparent. Although many of the issues which arose in this litigation are fairly common in CERCLA and MERLA cases, this court's order dated November 20, 1990, identifies the novel damages issues which were involved. (3) This case required a high level of legal skill on the part of all counsel. CERCLA and MERLA cases require attorneys to be thoroughly familiar with the statutory framework provided for such cases. Such familiarity requires the dedication of intellectual resources to the study of these particular statutes and is not commonly found in attorneys outside this specialty. (6 & 11) As mentioned above, the lode star amount was calculated using Gopher's counsel's rates for non-contingent litigation for established

penses included in the petition, and counsel's time and expenses excluded from the petition. The court is familiar with the time and expense necessary to prepare complicated civil litigation. After thoroughly examining the costs which have been included and excluded from Gopher's fee petition, the court is satisfied that the fees included in the petition represent time Gopher's counsel reasonably spent on this matter.

16. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

clients. (8) The court has considered the amount involved in this case and the results obtained. Gopher Oil has already been awarded over $423,000 plus prejudgment and post-judgment interest and Union Oil has been held solely responsible for the future costs of investigating, cleaning up and otherwise responding to the contaminated site. There was testimony at trial that the cleanup of the site could cost as much as $10,000,000. Plaintiff prevailed on its primary claim in this action and given the potential amount of Union Oil's future liability, the lode star amount is reasonable. (9) The experience and ability of Gopher's counsel is considered to be first-rate in this community. (12) Finally, the court has considered attorneys' fees awards in other environmental cases. *See Defenders of Wildlife v. Administrator, EPA*, 700 F.Supp. 1028, *fee award aff'd*, Nos. 88–5242 & 89–5243, slip op. (8th Cir. Aug. 8, 1990).

Although the court has not specifically analyzed all twelve of the *Johnson* factors, it has discussed in sufficient detail those factors which it considers relevant to this litigation. *See Hardman v. Board of Educ. of Dollarway, Ark.*, 714 F.2d 823, 825 (8th Cir.1983). The court believes it has fulfilled its responsibility of "provid[ing] a concise but clear explanation of its reasons for the fee award." *Id.* (citation omitted).

Gopher Oil also requests that it be reimbursed for fees incurred in preparing the fee petition. The Eighth Circuit has held that fees incurred in litigating attorneys' fees claims are recoverable. *Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir.1982). In reaching this conclusion the Eighth Circuit has adopted the reasoning of the First Circuit that "[i]t would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." *Id.* (citing *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) (other citations omitted)).

Although the *Jones* court was interpreting the Civil Rights Attorney's Fees Awards Act of 1976, this court believes that the reasoning is equally applicable to fees incurred in preparing a fee petition under CERCLA. *See H.A. Dasler v. E.F. Hutton*, 698 F.Supp. 172, 177 (D.Minn.1988) (allowing recovery for attorneys' fees incurred in litigating a motion for attorneys' fees related to an ERISA case). Moreover, Union Oil does not specifically challenge this award. Accordingly, Gopher Oil will be awarded attorneys' fees for preparation of the fee petition as follows:

| Attorney | Reasonable Hours Expended | Reasonable Rate Per Hour | Fee |
|---|---|---|---|
| Brian O'Neill | 2 Hours | $205 | $ 410.00 |
| Delmar Ehrich | 40 Hours | $150 | $6,000.00 |
| Paul Vaaler | 1 Hour | $100 | $ 100.00 |
| **TOTAL** | | | $6,510.00 |

b. *Paralegal Fees, Other Costs and Disbursements*

In *General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d 1415 (8th Cir.1990) the Eighth Circuit held that "CERCLA authorizes, with a sufficient degree of explicitness, the recovery by private parties of attorney fees *and expenses.*" *Id.* at 1422 (emphasis added). In its fee petition Gopher Oil requests reimbursement for the following disbursements:

| | |
|---|---|
| Photocopy Expenses | $25,779.32 |
| Printing, Binding, Offset | $ 33.60 |
| Travel Expenses | $11,339.48 |
| Depositions (Statements) | $ 8,913.20 |
| Court–Related | $ 3,885.70 |
| Long Distance Telephone | $ 309.10 |
| Postage | $ 73.39 |
| Database/Lexis | $ 7,650.30 |
| Local Courier Service | $ 898.34 |
| Legal Notices and Publications | $ 150.00 |
| Trial Exhibits and Illustrations | $ 5,643.62 |
| Miscellaneous Expenses (Including Supplies) | $ 1,233.48 |
| **TOTAL DISBURSEMENTS:** | **$65,909.53** |

Gopher Oil also requests reimbursement for expert witness fees as follows:

| | |
|---|---|
| Barr Engineering Co. | $31,675.66 |
| Newcombe & Hansen | $ 9,580.00 |
| **TOTAL EXPERT WITNESS FEES:** | **$41,255.66** |

■■■ Gopher Oil's request to be reimbursed for the listed disbursements and expert witness fees will be granted. Costs that are ordinarily billed to a client are routinely recoverable under fee statutes. *International Woodworkers v. Donovan,* 792 F.2d 762, 767 (9th Cir.1985) (citing *Thornberry v. Delta Airlines, Inc.,* 676 F.2d 1240, 1244 (9th Cir.1982), *vacated and remanded on other grounds,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1984); *Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir.1984)); *see also Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988). Union Oil contends that Gopher Oil has erroneously included certain costs in its fee petition which are not recoverable. Specifically, Union argues that attorney travel expenses, telephone, postage, local delivery and office expenses are non-recoverable and relies on *Hollenbeck v. Falstaff Brew-*

*ing Corp.,* 605 F.Supp. 421, 439 (E.D.Mo. 1984) *aff'd* 780 F.2d 20 (8th Cir.1985). Additionally, Union asserts that Database/Lexis costs and expenses for copies not identified as provided to the court or opposing counsel are not recoverable. In support of these propositions Union Oil cites *Litton Systems, Inc. v. American Tel. & Tel. Co.,* 613 F.Supp. 824, 836 (S.D. N.Y.1985) and *Tavarez v. Heckler,* 610 F.Supp. 1059, 1064 (S.D.N.Y.1985).

The court has examined each of the cases on which Union Oil relies and has concluded that they all suffer from the same defect. None of the cases Union Oil cites involves an award of costs pursuant to an attorneys' fees and cost statute, rather, all three cases address the availability of costs under the taxation of costs statute, 28 U.S.C. § 1920. The cases are distinguishable because an award under that statute is radically different than an award of attorneys' fees and costs under CERCLA or MERLA.[17] Section 1920 lists six specific categories of litigation costs that are recoverable. The statute does not allow for a general award of "costs" or "disbursements" as is allowed under CERCLA or MERLA. Given the language of § 1920, it is appropriate to exclude costs not specifically delineated within the statute. *See, e.g., Litton Systems, Inc. v. American Tel. & Tel. Co.,* 613 F.Supp. 824, 836 (S.D.N.Y. 1985) (listing certain costs which are nonrecoverable under § 1920). 28 U.S.C. § 1920 is not at issue in this case. Accordingly, law interpreting costs recoverable under attorneys' fees and costs statutes, not the taxation of costs statute, are applicable to this matter.

Gopher Oil requests reimbursement for legal assistant fees as follows:

---

17. 28 U.S.C. § 1920 entitled "Taxation of Costs" provides:

A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and copies of papers necessarily obtained for use in a case;
(5) Docket fees under § 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.
A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree. 28 U.S.C. § 1920 (1988).

| | |
|---|---|
| Janice M. Cramer | $20,868.75 |
| Richard L. Cox | $20,156.25 |
| Melissa K. Winn | $31,031.25 |
| Joan M. Sherwin | $23,568.75 |
| Other Legal Assistants | $ 8,231.25 |
| **TOTAL LEGAL ASSISTANT FEES:** | $103,856.25 |

■ Legal assistant fees are compensable in the Eighth Circuit. *Winter v. Cerro Gordo County Conservation Bd.*, 925 F.2d 1069, 1071 (8th Cir.1991); *Gunderson v. W.R. Grace & Co.*, 874 F.2d 496, 501 (8th Cir.1989) (citing *Dependahl v. Falstaff Brewing Corp.*, 496 F.Supp. 215 (E.D.Mo. 1980), *aff'd*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (holding that "the work of the law clerks and legal assistants is compensable under an award of attorney's fees.")).

In accordance with the foregoing, the total fees and expenses are as follows:

| | |
|---|---|
| Attorneys' Fees | $348,825.00 |
| Preparation of Fee Petition | $ 6,510.00 |
| Disbursements | $ 65,909.53 |
| Expert Witness Fees | $ 41,255.66 |
| Legal Assistant Fees | $103,856.25 |
| Deduction for Unsuccessful Common Law Claims | ($ 6,975.92) |
| **TOTAL FEES AND EXPENSES:** | $559,380.52 |

4. Calculation of Fees and Expenses Recoverable Under MERLA

In subsection 2 above, the court concluded that it will award reasonable attorneys' fees to Gopher Oil under MERLA. The court will now address which attorneys' fees and expenses prayed for in Gopher Oil's petition are recoverable under Minn. Stat. § 115B.14.

### a. *Attorneys' Fees*

■ Under Minnesota law an award of attorneys' fees is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Meyer v. Meyer*, 359 N.W.2d 74, 77 (Minn.Ct.App. 1984). In awarding attorneys' fees, many factors should be considered including the time and effort required, the value of the interest involved, and the results secured at trial. *Bloomington Elec. Co. v. Freeman's, Inc.*, 394 N.W.2d 605, 608 (Minn.Ct. App.1986) (citing *Jadwin v. Kasal*, 318 N.W.2d 844, 848 (Minn.1982)). The amount of the award should be in reasonable relation to the amount of the judgment obtained. *Asp v. O'Brien*, 277 N.W.2d 382, 385 (Minn.1979). In calculating attorneys' fees, a court should focus on the hourly rates for similar work in the community. *City of Minnetonka v. Carlson*, 298 N.W.2d 763, 766 (Minn.1980). The reasonableness of an attorney's value may be determined by the trial court's observation of the attorney's services. *Kelly v. Kelly*, 374 N.W.2d 580, 582 (citing *Ryan v. Bigos Properties*, 351 N.W.2d 680, 681 (Minn.Ct. App.1984)); *see also Aesoph v. Golden*, 367 N.W.2d 639, 642 (Minn.Ct.App.1985) (citing *Ryan* ).

■ In addition to these general guidelines regarding attorneys' fees, the Minnesota Supreme Court has identified seven factors a court should consider in determining the amount of fees to award. The seven factors are: (1) The character, ability and experience of the attorneys; (2) the responsibilities they assumed; (3) the difficulty of the issues raised; (4) the time, labor and skill required; (5) customary fees for similar services; (6) the amount involved; and (7) the results obtained. *In re Great Northern Iron Ore Properties*, 311 N.W.2d 488, 493 (Minn.1981) (citing *In re Estate of Bush*, 304 Minn. 105, 119–20, 230 N.W.2d 33, 41–42 (1975); *In re Atwood*, 227 Minn. 495, 502, 35 N.W.2d 736, 741 (1949)); *see also In re Boright*, 359 N.W.2d 647, 651 (Minn.Ct.App.1984) (directing attorneys' fees to be calculated in accord with seven listed factors).

Minnesota law regarding the calculation of attorneys' fees is not unlike the calculation of attorneys' fees under federal law. There is substantial similarity between calculating attorneys' fees using the seven factors listed above and calculating the lode star amount in light of the twelve *Johnson* factors. This conclusion is not surprising because the Minnesota Supreme Court has adopted the approach of the United States Supreme Court for calculat-

ing attorneys' fees. In *Specialized Tours, Inc. v. Hagen,* 392 N.W.2d 520 (Minn.1986), the Minnesota Supreme Court stated:

> We are free to adopt our own standards to be applied by our courts in determining reasonable attorney fees recoverable under the Minnesota Security Act. We need not defer to the analytical approach of the federal courts in resolving these issues. We do believe, however, that the analysis of the Supreme Court in *Hensley* provides a sensible and fair approach to such determinations.
>
> The trial court essentially limited its inquiry into reasonable attorney fees to determine hours expended times hourly rate. We remand to the trial court to follow a *Hensley*-type analysis and weigh the results obtained in recalculating proper attorney fees.

*Id.* at 542–43. In light of this approach, the court concludes that applying Minnesota law to Gopher Oil's attorneys' fees petition yields the same result obtained under federal law. *See, e.g., Shepard v. City of St. Paul,* 380 N.W.2d 140, 143 (Minn.Ct. App.1985) (citing *Hensley* and holding that Minnesota law, like federal law, does not allow recovery for fees incurred pursuing unsuccessful claims.) Consequently, pursuant to Minn.Stat. § 115B.14 and Minnesota common law, the court will award Gopher the same attorneys' fees under MERLA as under CERCLA. As discussed earlier, this award is not in addition to the award under CERCLA, rather it is granted alternatively to the CERCLA award.

### b. *Paralegal Fees, Other Costs and Disbursements*

Minn.Stat. § 115B.14 provides that a court may award a prevailing party "costs, disbursements ... and witness fees." As mentioned above, no court has construed this statute. Consequently, the court will look to the language and purpose of the statute and other pertinent Minnesota law in determining which costs and disbursements are recoverable under MERLA.

Minn.Stat. § 645.16 entitled "Legislative Intent Controls" provides:

> The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.
>
> When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit. When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:
>
> (1) The occasion and necessity for the law;
>
> (2) The circumstances under which it was enacted;
>
> (3) The mischief to be remedied;
>
> (4) The object to be attained;
>
> (5) The former law, if any, including other laws upon the same or similar subjects;
>
> (6) The consequences of a particular interpretation;
>
> (7) The contemporaneous legislative history; and
>
> (8) Legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16 (1990). As the parties recognize, Minn.Stat. § 115B.14 is not clear and free from all ambiguity. Consequently, the court cannot simply apply the "letter of the law," rather the court must attempt to ascertain the intent of the legislature and effectuate the purpose of the statute.

One commentator has summarized the purposes of MERLA as follows:

> (1) To impose strict liability for harm caused by release of a hazardous substance, placing financial responsibility on those responsible for the release rather than on the injured parties or the public;
>
> (2) To authorize the state to clean up contaminated sites and cover cleanup costs in court—that is, to clean up first and litigate later; and
>
> (3) To fund state cleanup activity and match cleanup money provided under CERCLA.

Williams, *Legislative History of the Minnesota "Superfund" Act*, 10 Wm. Mitchell L.Rev. 851, 858 (1984) (footnote omitted). *See also In re Greater Morrison Sanitary Landfill*, 435 N.W.2d 92, 98 (Minn.Ct.App.) *rev. denied* (March 29, 1989) (citing Williams, 10 Wm. Mitchell L.Rev. at 858 and holding that "[t]he Superfund Act was designed primarily to impose and allocate liability for harm caused by hazardous substances; to authorize state clean up of contaminated sites; and to create a fund from which clean up costs could be paid.").

The legislative purpose particularly applicable to the issue at hand is "placing financial responsibility on those responsible for the release rather than on the injured parties or the public." This legislative intent weighs in favor of construing the words "costs" and "disbursements" liberally in favor of plaintiffs like Gopher Oil and against defendants like Union Oil. The notion that Minn.Stat. § 115B.14 should be liberally construed is further buttressed by the fact that it is a remedial environmental statute. In *In re Morrison Sanitary Landfill*, 435 N.W.2d 92 (Minn.Ct.App.) *rev. denied* (Mar. 29, 1989), the Minnesota Court of Appeals examined Minnesota's landfill closure law, Minn.Stat. § 116.07, subd. 4f. After examining the "broad environmental policy objectives" of Minnesota law, the court held that "[b]ecause it is designed to further the state's strong environmental policy, the closure law is remedial in nature; therefore, it should be liberally construed to effectuate the legislative intent to protect the environment." *Id.* at 99 (citing *State v. Industrial Tool & Die Works, Inc.*, 220 Minn. 591, 604, 21 N.W.2d 31, 38 (1945); Minn.Stat. § 645.16(3) & (4)).

▮ Like the Minnesota landfill closure law, MERLA is a remedial statute. Indeed, there is no dispute that in this case MERLA has been used to remedy past harm. Moreover, there can be no dispute that MERLA was designed to further the state's strong environmental policy. Accordingly, MERLA should be liberally construed to effectuate the legislative intent to protect Minnesota's environment.

In addition to the language and purpose of MERLA, pertinent Minnesota case law sheds light on what costs are recoverable under § 115B.14. Gopher Oil has correctly stated that Minnesota law allows recovery of certain specific expenses associated with litigation. *See, e.g., Green Glo Turf Farms, Inc. v. State*, 347 N.W.2d 491, 495 (Minn.1984) (it is within the discretion of the trial court to tax costs incident to taking depositions provided that the depositions are not cumulative, duplicative or peripheral); *Streibel v. Minnesota State High School League*, 321 N.W.2d 400, 403 (Minn.1982) (trial court has discretion to determine whether deposition costs were "necessary" under Minn.Stat. § 549.04); *Peterson v. City of Elk River*, 312 N.W.2d 243 (Minn.1981) (trial court has discretion to award expert witness fees); *Klinzing v. Gutterman*, 250 Minn. 534, 538, 85 N.W.2d 665, 668 (1957) (same); *Johnson v. Southern Minnesota Machinery*, 460 N.W.2d 68, 73 (Minn.Ct.App.1990) (trial court has flexibility to award costs of preparing expert witnesses if necessary for courtroom testimony); *Salo v. Duluth & I.R.R. Co.*, 124 Minn. 361, 364, 145 N.W. 114, 115 (1914) (it is within the trial court's discretion to determine whether fees incurred in producing documentary evidence were "necessary" under taxation of costs statute); *Mankato Lime & Stone Co. v. Craig*, 81 Minn. 224, 225 83 N.W. 983 (1900) (witness fees incurred are taxable as costs so long as witness were not called in bad faith).

▮ As these cases make clear, certain litigation expenses are recoverable in Minnesota under the taxation of disbursements statute, Minn.Stat. § 549.04.[18] The language of Minn.Stat. § 115B.14 is more generous than the language of the general

---

**18.** Minn.Stat. § 549.04 entitled "Disbursements; taxation and allowance" provides:

In every action in a district court, the prevailing party, including any public employee who prevails in an action for wrongfully denied or withheld employment benefits or rights, shall be allowed reasonable disbursements paid or incurred, including fees and mileage paid for service of process by the sheriff or by a private person.

Minn.Stat. § 549.04 (1990).

taxation of costs statute. The general taxation of costs statute allows for the recovery of "reasonable disbursements" and service of process fees. Minn.Stat. § 115B.14 allows the court to award a prevailing party "costs, disbursements and reasonable attorney fees and witness fees." If all of the expenses discussed in the preceding paragraph are recoverable under the general taxation of costs statute, surely they are recoverable under Minn.Stat. § 115B.14. To hold otherwise would do violence to the legislature's intention that the entire statute be effective. Minn.Stat. § 645.17 (1990) (stating that "the legislature intends the entire statute to be effective and certain."). The most reasonable interpretation of Minn.Stat. § 115B.14 is to allow recovery of expenses which are recoverable under the general taxation of costs statute and to allow recovery of the specific expenses listed in the statute. When examining close cases, the authorities stated above and MERLA's legislative intent weigh in favor of construing § 115B.14 broadly to allow for recovery of a prevailing party's expenses.

■ It remains for the court to consider precisely which costs and disbursements contained in Gopher Oil's fee petition are recoverable. The court starts by noting that § 115B.14 places this decision within the court's discretion. Minn.Stat. § 115B.14 ("the court *may* award costs."). This grant of discretion is in accord with Minnesota law generally. *See, e.g., Bloomington Elec. Co. v. Freeman's, Inc.,* 394 N.W.2d 605, 608 (Minn.Ct.App.1986) (holding that attorneys' fees "may be awarded within the discretion of the trial judge.") (following *New Ulm Building Center, Inc. v. Studtmann,* 302 Minn. 14, 225 N.W.2d 4 (1974)). In this respect, Minnesota law parallels federal law. *General Electric Co. v. Litton Industrial Automation Systems, Inc.,* 920 F.2d 1415, 1422 (8th Cir.1990) (holding that the Eighth Circuit gives "great deference to the district court's judgment in the award of attorney fees."). Given that both Minnesota and federal law place the determination of what fees and disbursements are recoverable within the trial court's discretion, the court will adopt

its analysis of what expenses are recoverable under federal law as its analysis for what expenses are recoverable under Minnesota law.

■ It is appropriate to award the same costs under Minnesota law as under federal law for at least two reasons. First, the language and statutory purposes of MERLA and CERCLA are nearly identical. If an award of certain costs and disbursements furthers the purposes of CERCLA it will likewise further the purposes of MERLA. Second, the reasons for awarding certain litigation costs in federal actions are equally applicable to litigation costs in state actions. For instance, federal courts encourage the use of paralegals. *See, e.g., Selzer v. Berkowitz,* 477 F.Supp. 686, 690 n. 3 (E.D.N.Y.1979). There is no reason to believe that the federal policy of encouraging the use of paralegals to prune litigation expense is not equally applicable in state court actions. Indeed, the jurisdictional universality of such policies is reflected in the instant case. In this case Gopher Oil has pursued both federal and state claims using many of the same pleadings and arguments while creating a single record in a federal forum. It would violate common sense to hold that judicial policies which encourage efficient and cost-effective litigation are applicable in federal but not state court actions.

■ The conclusion that MERLA should be interpreted similarly to CERCLA is in conformity with Minnesota law which allows courts to interpret statutes in light of other laws which address the same or similar subjects. Minn.Stat. § 645.16(5). This conclusion is also consistent with law governing interpretation of statutes *in pari materia.* Simply stated, under Minnesota law, statutes which have the same purpose are *in pari materia* and should be construed together. *Doe v. State Bd. of Medical Examiners,* 435 N.W.2d 45, 49 (Minn.1989) (citing *Apple Valley Red–E–Mix, Inc. v. State,* 352 N.W.2d 402, 404 (Minn.1984)). The Minnesota Supreme Court has provided a more detailed explanation of the policies which

underlie the construction of statutes *in pari materia:*

> Statutes relating to the same subject are presumed to be imbued with the same spirit and to have been passed with deliberation and full knowledge of all existing legislation on the subject and regarded by the lawmakers as being parts of a connected whole.

> Statutes are in pari materia when they relate to same matter or subject even though some are specific and some general and even though they have been enacted simultaneously and do not refer to each other expressly.

*In re Tveten,* 402 N.W.2d 551, 554 (Minn. 1987) (citing *Kaljuste v. Hennepin County Sanitorium Comm'n.,* 240 Minn. 407, 414, 61 N.W.2d 757, 762 (1953)) (other citation omitted). The court recognizes that statutes *in pari materia* are typically statutes in force in the same jurisdiction. W. Eskridge Jr. & P. Frickey, *Cases and Materials on Legislation: Statutes and the Creation of Public Policy,* 788 (1988). Because of the well-documented similarity, particularly in purpose, between CERCLA and MERLA, however, Minnesota law governing interpretation of statutes *in pari materia* is of some assistance to the court in this case.

For the foregoing reasons, the court will award Gopher Oil the same costs, disbursements and expert witness fees under MERLA as under CERCLA. Once again, the court notes that this award of expenses under MERLA is not in addition to the award under CERCLA, rather, it is an alternative award.

## C. *Defendant's Renewed Motion For A New Trial And Motion For Amendment of the Judgment*

Union Oil has renewed its motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Union moves for a new trial on the following three grounds: (1) the jury instructions and Special Verdict Form contained plain error because they allowed a finding of fraudulent misrepresentation without a finding of justified reliance, (2) the jury instructions were plainly erroneous in defining the burden of proof on the fraud count as proof by a preponderance of the evidence rather than by clear and convincing evidence, and (3) the special verdict is contrary to the clear weight of the evidence. (Defendant's Memorandum of Law in Support of its Renewed Motion for a New Trial at 1). The court previously denied Union Oil's motion for a new trial. *Gopher Oil Company, Inc. v. Union Oil Company of California, Inc.,* No. 4-88-16, slip op. at 2 (D.Minn. Oct. 15, 1990). The grounds on which Union Oil predicates its renewed motion for a new trial have been addressed either at the time of trial or in the post-trial motions. Although the court provided Union a number of opportunities to object to the jury instructions, Union did not object to the jury charge and declared the instructions to be "error free." No new evidence or arguments have been presented which warrant or require a new trial. Accordingly, Union Oil's renewed motion for a new trial will be denied.

Union Oil has also moved the court to amend its findings of fact and judgment to conform to the Findings of Fact, Conclusions of Law, and Order For Judgment proposed by Union in its motion of August 31, 1990.[19] In arriving at the decision on which the judgment entered in this matter was based, the court considered Union Oil's proposed findings of fact and conclusions of law. Although the court adopted some of Union's proposed findings, most of Union's proposals were rejected. After re-examining Union Oil's proposed findings of fact and conclusions of law the court must again reject those proposals because they are inconsistent with the facts and law on which this court has entered judgment. The court remains convinced that the judgment entered in this case is correct. No new material has been presented which disturbs this conviction. Accordingly, Union Oil's motion for an amendment of the judgment entered in this case will be denied.

---

19. *See* footnote 1, *supra.*

CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff Gopher Oil Company, Inc.'s motion for certification pursuant to 28 U.S.C. § 1292(b) is granted. The court is of the opinion that the ultimate termination of this litigation may be materially advanced if the United States Court of Appeals for the Eighth Circuit immediately reviews whether it is proper for the court to retain jurisdiction over plaintiff's fraud claim and determine damages due thereunder at some future date, or whether this court should have immediately awarded Gopher Oil damages in accordance with the jury's verdict;

2. Plaintiff Gopher Oil Company, Inc.'s application under CERCLA for fees and other expenses is granted as delineated herein in the amount of $559,380.52. Alternatively, plaintiff Gopher Oil Company, Inc.'s application under MERLA for fees and other expenses is granted as delineated herein in the amount of $559,380.52;

3. Defendant Union Oil Company of California, Inc.'s renewed motion for a new trial is denied; and

4. Defendant Union Oil Company of California, Inc.'s motion for amendment of the judgment entered in this case on November 20, 1990, is denied.